THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FLOYD BROWN, Defendant-Appellant.

Fourth District   No. 4—86—0155

Opinion filed March 11, 1987.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and James W. Ackerman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

Defendant was convicted of retail theft over $150 (Ill. Rev. Stat. 1985, ch. 38, par. 16A—3(a)), a Class 3 felony (Ill. Rev. Stat. 1985, ch. 38, par. 16A—10(3)). Both of the issues raised by defendant on appeal relate to the selection of the jury. Because no issue is raised regarding the sufficiency of the evidence upon which defendant was convicted, the facts of this case will be set forth only to the extent necessary to resolve the issue raised on appeal.

On December 4, 1985, defendant was charged with retail theft in excess of $150 (Ill. Rev. Stat. 1985, ch. 38, par. 16A—3(a)). On January 14, 1986, the State filed a notice of election notifying the defendant that the State planned to try the defendant on the present charges rather than any other pending charges.

On January 27, 1986, defense counsel filed a motion for continuance stating that the State had previously elected to proceed on the present charges rather than cause No. 85—CF—39, a case in which defendant was charged with pandering (Ill. Rev. Stat. 1983, ch. 38, par. 11—16) and that prior to trial, the State's Attorney had posted a schedule of jury trials, listing both the present cause and the cause in which the defendant was charged with pandering. Counsel stated that the schedule had been posted on a bulletin board and had been read by many jurors. Counsel argued that the posting prejudiced the defendant in the eyes of potential jurors, and, therefore, the trial should be continued to the next jury call. A copy of the felony jury trial setting was attached to the defendant's motion. A hearing on the defendant's motion for a continuance was held on January 20, 1986, and the motion was denied. The court indicated that defense counsel could question the potential jurors concerning their having read the jury list during *voir dire*.

The *voir dire* of the jurors was neither recorded nor transcribed. In defendant's post-trial motion, defense counsel alleged that the court had refused to dismiss for cause those jurors who had seen and read the jury trial schedule posted by the State's Attorney which listed the charges against the defendant in another case. Defendant's post-trial motion was denied.

Following the *voir dire* of jurors, defense counsel moved for a mistrial based upon the State's exercise of peremptory challenge of Mr. Rhymes, who was, according to defense counsel, the only potential black juror. Defense counsel further alleged that the State's Attorney of Macon County had a consistent practice of excusing black jurors and that Assistant State's Attorney Richard Current, the prosecutor in the instant case, had been the worst offender of that particular practice. Counsel then stated that in the prior three days he had picked three juries and, in each of those cases, the State had exercised peremptory challenges to exclude every black juror. Counsel requested that the court either grant a mistrial or order Rhymes empaneled as one of the jurors.

In response, the assistant State's Attorney objected to the motion for mistrial and stated that the reason he excluded Rhymes was that Rhymes was the only juror who had some kind of contact with defendant. Based on the fact that Rhymes had stated that he had seen Brown in the local taverns, the prosecutor stated that Rhymes was not the type of juror the State wanted. The motion for mistrial was denied.

The first argument raised by defendant on appeal is that he was denied equal protection of the law by the State's use of a peremptory challenge to exclude the only black venireman from service on the jury in the instant case. Defendant argues that the trial court committed reversible error in failing to grant his motion for a mistrial on this ground.

■ We first note that defendant failed to raise this point in his post-trial motion, and that he did not argue this point at the oral argument of said motion. Normally, failure to raise a point in a post-trial motion acts as a waiver of the issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 502, 460 N.E.2d 742, 743; *People v. Pruden* (1982), 110 Ill. App. 3d 250, 256, 442 N.E.2d 284, 289.) Nevertheless, we adhere to the principle that we should consider errors not properly preserved in a criminal case where their nature is such as to deprive an accused of his constitutional rights. (See *People v. Weinstein* (1966), 35 Ill. 2d 467, 471, 220 N.E.2d 432, 434.) Furthermore, a reviewing court's responsibility for a just result and for the mainte-

nance of a uniform body of precedent may sometimes override considerations of waiver. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) Consequently, we have decided to address the issue regarding the peremptory challenge of the black juror despite the fact that this issue was not raised in the post-trial motion.

In 1965, the United States Supreme Court stated that the State's exercise of peremptory challenges which resulted in an all white jury did not of itself show a constitutional violation. Rather, a constitutional issue of equal protection arose only where there was a systematic and purposeful exclusion of blacks from juries because of race. (*Swain v. Alabama* (1965), 380 U.S. 202, 223-24, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837-38.) The standard set forth in *Swain* has been consistently followed by Illinois courts. See *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202, *cert. denied* (1984), 469 U.S. 1028, 83 L. Ed. 2d 372, 105 S. Ct. 447.

However, the United States Supreme Court recently reconsidered the State's use of peremptory challenges to exclude potential black jurors. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) The United States Supreme Court in *Griffith v. Kentucky* (1987), 479 U.S. ____, 93 L. Ed. 2d 649, 107 S. Ct. 708, held that the new standard enunciated in *Batson* was to be applied retroactively to cases pending on direct review or not yet final when *Batson* was decided. Consequently, even though defendant was convicted prior to the date of the Supreme Court's opinion in *Batson*, the new standards set forth in *Batson* apply to the instant case.

In *Batson*, the court recognized that an interpretation of *Swain* such as that adopted in Illinois precludes a black defendant from challenging the exclusion of potential black jurors, stating:

"A number of lower courts following the teaching of *Swain* reasoned that proof of repeated striking of blacks over a number of cases was necessary to establish a violation of the Equal Protection Clause. Since this interpretation of *Swain* has placed on defendants a crippling burden of proof, prosecutors' peremptory challenges are now largely immune from constitutional scrutiny. For reasons that follow, we reject this evidentiary formulation as inconsistent with standards that have been developed since *Swain* for assessing a prima facie case under the Equal Protection Clause." (*Batson v. Kentucky* (1986), 476 U.S. 79, ____, 90 L. Ed. 2d 69, 84-85, 106 S. Ct. 1712, 1720-21.)

The following excerpt from *Batson* is pertinent to our analysis of the issue regarding the use of peremptory challenges:

"The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain*. [Citations.] These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group [citation] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. [Citations.] But the prosecutor may not rebut the

defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to defendant because of their shared race. [Citations.] Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, *supra*, at 5, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the juror's race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' [Citation.] If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' [Citation.] The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." 476 U.S. 79, ____, 90 L. Ed. 2d 69, 87-89, 106 S. Ct. 1712, 1722-24.

■ Initially, we must determine whether defendant has made out a *prima facie* case of discriminatory use of a peremptory challenge. In the instant case, there is no doubt that the defendant, who is black, is a member of a cognizable racial group. Furthermore, it appears that the State used a peremptory challenge to exclude the only black person in the venire. Although only one black person was excluded from the jury in the instant case, we believe that this was sufficient to satisfy the first prong of the *Batson* test. The second prong of the test is a presumption that peremptory challenges facilitate racial discrimination. This presumption puts no burden on the defendant; rather, it is a fact which a defendant is permitted to rely on to bolster the strength of his case after he meets the first prong of the *Batson* test.

The third prong of the *Batson* test requires that, by the use of the facts proving the first prong of the test, the presumption constituting a second prong of the test, and any other relevant circumstances, the defendant raise an inference that the prosecutor used peremptory challenges to exclude a venireman on account of his race. The United

States Supreme Court vested a great amount of discretion in the trial court in determining whether or not this third prong has been satisfied. This determination requires a subjective decision on the part of the trial judge in view of the totality of the circumstances surrounding the jury selection process. We note that the *voir dire* which was conducted in this case was not transcribed. Therefore, it is impossible for this court of review to determine what the circumstances were regarding the empaneling of the jury.

It is well settled that the responsibility for the proper preservation of the record of proceedings before the trial court rests on a defendant. (87 Ill. 2d Rules 323(c), 612(c); *People v. Smith* (1969), 42 Ill. 2d 479, 248 N.E.2d 68.) This includes the *voir dire*. (*People v. Johnson* (1976), 43 Ill. App. 3d 649, 357 N.E.2d 151.) A consideration of a defendant's challenge to the composition of a jury cannot be made without an adequate record of *voir dire*. (*People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) Even under the new standards set forth in *Batson*, the burden is still on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination. (*Batson v. Kentucky* (1986), 476 U.S. ___, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) By failing to provide this court with a transcript of the *voir dire*, or some suitable substitute, defendant has failed to meet his burden of proving that the circumstances surrounding the empaneling of the jury led to purposeful discrimination. Consequently, we conclude that defendant has failed to establish the third prong of the test set forth in *Batson*.

Even assuming *arguendo* that the third prong of the *Batson* test has been met and a *prima facie* case of discrimination against black jurors had been established, thereby shifting the burden to the State to come forward with a neutral explanation for challenging the potential black juror, we believe that the State presented a sufficient "race neutral" explanation to satisfy the burden placed upon them by *Batson*. Although no precise standards are set forth in *Batson* for determining what constitutes a proper neutral explanation for the exercise of a peremptory challenge, we believe that the prosecutor's explanation in the instant case was sufficient to satisfy the burden of rebutting the inference of discrimination. The prosecutor noted that the potential black juror who was excluded in the instant case had seen defendant in the taverns, and that this person was the only potential juror who had any knowledge of defendant. Although this explanation may not be sufficient to challenge a juror for cause, we believe that this is the type of neutral explanation which is acceptable pursuant to

the standards for determining discrimination in the selection of juries which were set forth in *Batson*.

Defendant's second and final argument on appeal relates to the fact that a schedule of upcoming jury trials, which included defendant's name beside both the instant case and another charge, was posted in an area which was accessible to the jury which was chosen for this case. Prior to the trial, defense counsel sought a continuance, arguing that defendant was unduly prejudiced by the posting of the schedule. Defense counsel stated that he had seen many of the potential jurors reading the schedule. The court denied defendant's motion, and informed defense counsel that he could question the potential jurors regarding their having read the list during *voir dire*. As was previously noted, the *voir dire* was not transcribed. In his brief, defendant alleges that the trial court refused to dismiss for cause those jurors who had read the jury trial schedule. There is no evidence in the record to support this statement.

A mere allegation is not sufficient to bring a matter to the attention of the reviewing court. (*People v. Glover-El* (1981), 102 Ill. App. 3d 535, 430 N.E.2d 147, *cert. denied* (1982), 458 U.S. 1110, 73 L. Ed. 2d 1372, 102 S. Ct. 3492.) An appellate court is confined to the common law record which is submitted to it, and the record cannot be supplemented or expanded by statements, arguments, or contentions which are *dehors* the record. (*People v. Spooner* (1974), 22 Ill. App. 3d 685, 318 N.E.2d 66.) The burden of showing that a juror possesses a disqualifying state of mind is on the party challenging the juror. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) Without a transcript of the *voir dire*, or some other form of proper evidence, defendant simply cannot meet the burden of showing that he was prejudiced by the posting of the jury schedule.

For the foregoing reasons, defendant's conviction and sentence are hereby affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.