Jimmy Lee **GRADY**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 05–86–00533–CR, 05–86–00534–CR.

Court of Appeals of Texas,
Dallas.

May 12, 1987.

C. Wayne Huff, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before WHITHAM, BAKER and LAGARDE, JJ.

BAKER, Justice.

Appellant, Jimmy Lee Grady, appeals judgments of conviction in two cases of aggravated sexual assault. Appellant pleaded not guilty and was tried before a jury. Appellant was found guilty in both cases and punishment assessed by the jury at life confinement and a fine of $10,000 in each case.

Appellant appeals on two points of error as follows: (1) the trial court erred in overruling appellant's motion to discharge the jury because, during jury selection, the State used its peremptory challenges to systematically exclude blacks from serving on the jury solely on the basis of race; and (2) the trial court erred during the punishment phase when, over objection, it instructed the jury as to the existence and possible effects of the law regarding parole. We affirm.

Appellant's first point of error asserts the State exercised its peremptory challenges to strike minorities from the jury for racial reasons. He maintains such purposeful discrimination denied him federal and state constitutional guarantees of equal protection, as well as his right to a jury drawn from a cross-section of the community under article I, section 10 of the Texas Constitution. At the trial appellant objected to the State's use of its peremptory challenges to strike all four remaining black members of the venire. After hearing evidence and argument the trial court overruled appellant's objection. On appeal

it is clear that appellant bases his discrimination argument on the recent case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant's case was tried six weeks before the *Batson* case was decided. Obviously, neither counsel nor the trial court could have anticipated the impact of that decision on this case. Nevertheless, *Batson*'s requirements apply retroactively to cases like this one pending on direct appeal or not yet final. *Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

▇ The exercise of peremptory challenges by the State for purely racial reasons violates the Equal Protection clause. *Swain v. Alabama*, 380 U.S. 202, 203–04, 224, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965). In *Swain*, the Supreme Court held that a defendant could prove unlawful discrimination by the State through its use of peremptory challenges, not merely by pointing to the exclusion of a racial group from the jury in his own case, but only by showing a systematic exclusion in case after case. In *Batson*, the court overturned the evidentiary requirements of *Swain* and held:

[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group ... and that the prosecution has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate".... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause ... [b]ut the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.... [T]he Equal Protection Clause ... forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black ... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections ...." The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Batson*, 106 S.Ct. at 1722–24. (citations and footnotes omitted).

On original submission of this case, the record was carefully reviewed. The record revealed that after the appellant objected that the State utilized its peremptory strikes for discriminatory purposes, the appellant offered testimony from two witnesses, his attorney and the prosecutor. This evidence established that Grady is black, that the victims of rape of which he is accused are white, and that the prosecutor used his peremptory challenges to strike all four remaining blacks on the venire. These individuals were Mr. Turner, number two; Ms. Gardner, number seven; Mr. Willis, number fourteen; and Ms. Moore, number thirty-two. As previously stated, the court overruled this motion and empaneled the jury. We could not determine from the record before us on original submission whether appellant met his burden under the *Batson* criteria. Accordingly, the case was remanded to the trial court for a hearing to determine whether the appellant could make a prima facie case of racial discrimination and, if so, whether the State could provide racially neutral reasons for the exercise of its peremptory challenges with respect to the four veniremen in question. The trial court carefully carried out a full hearing on these issues and filed findings of fact and conclusions of law with this Court together with a transcript of all the testimony and evidence adduced at this hearing. The Court found that appellant did establish a prima facie case of purposeful discrimination in the State's use of its peremptory challenges to strike all four blacks remaining on the venire, but it further found that the State had given racially neutral explanations for its use of peremptory challenges against each of the four blacks who were struck. The Court, after having considered these explanations and considering all relevant circumstances, found that the State's use of their peremptory challenges was not racially motivated, and accordingly held that the appellant had failed to establish purposeful racial discrimination by the State in the use of their peremptory challenges.

We may only reverse the trial court's ruling if that determination is clearly erroneous. *Rodgers v. State,* 725 S.W.2d 477 (Tex.App.—Houston [1st Dist.], 1987, pet. filed).

As a result of the trial court's finding a prima facie case made by the appellant, the burden shifted to the State to present its racially neutral explanations, if any, for exclusion of the black veniremen. *Batson,* 106 S.Ct. at 1723. The prosecutor involved with the jury selection then testified as to his reasons for the peremptory challenges of the four black veniremen.

He testified that juror number two, Mr. Turner, was struck because he was a twenty-three year old, single male who had held his current job for only one year. In addition, a member of his immediate family had been arrested for theft. Also, Mr. Turner equivocated on his ability to give the full range of punishment. He appeared reluctant to impose a life sentence in the case. Finally, Turner stated that he may have seen televised reports of the officers involved in the case.

Juror number seven, Ms. Gardner, was struck for two main reasons according to the prosecutor's testimony. She was a forty-year old female who exhibited demeanor problems with the law of parties as well as the full range of punishment. Although the voir dire answers indicated an ability to apply the law, the prosecutor's testimony was to the effect that her demeanor suggested to the contrary. She had had prior jury service in a civil case which resulted in a mistrial. The prosecutor testified that he traditionally avoids jurors from cases resulting in mistrials.

The prosecutor testified that he struck number fourteen, Mr. Willis, because a check of criminal records revealed that Mr. Willis had been arrested twice in the past for theft in Dallas County. The prosecutor stated he felt that since the prospective juror had been arrested twice he was not suited for jury duty in a criminal district court.

Finally, juror number thirty-two, Ms. Moore, who was a thirty-two year old female, was struck by the State because the prosecutor felt she may be more sympathetic to young defendants like herself.

The prosecutor also noted that this particular individual smiled at the defendant as she entered the courtroom. Finally, she had omitted an answer to the religious preference question on the juror information card. It was the prosecutor's opinion that he preferred jurors with some religious affiliation.

■ As the Supreme Court has observed, following the articulation by the prosecutor of the neutral explanations related to the particular case, the trial court then will have the duty to determine if the defendant has established purposeful discrimination. In this context the trial court's findings will largely turn on evaluation of credibility, and a reviewing court ordinarily should give those findings great deference. *Batson*, 106 S.Ct. at 1724. The trial court, in its supervision of the voir dire examination, is in a unique position to determine whether all "relevant circumstances" do in fact establish a case of purposeful discrimination. Reviewing the reasons articulated by the prosecutor in this case, we cannot say that the trial court was clearly erroneous in finding that racially neutral reasons existed for the peremptory challenge of each of the four veniremen in question. Persons may be struck because they have a bias against the range of punishment or because family members have had problems with the law. *Rijo v. State*, 721 S.W.2d 562, 565 (Tex.App.—Amarillo 1986, no pet.). Accordingly, the reasons articulated by the prosecutor for the striking of Mr. Turner were sufficiently neutral.

■ Facial expressions and body english have been upheld as sufficiently neutral. *Chambers v. State*, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, pet. filed). Additionally, special circumstances such as previous exposure to a mistrial in a civil case may provide sufficient cause for striking a proposed venireman. Therefore, with regard to the prosecutor's striking of Ms. Gardner as a juror, we cannot find that the trial court's ruling was clearly erroneous.

With respect to juror Willis, the two prior arrests provide a neutral reason for his exclusion from the jury. *See Rijo v. State*, 721 S.W.2d at 564.

■ The challenge to Ms. Moore was also not clearly erroneous. The prosecutor noted her youthful appearance. Similarity of age and appearance is sufficient basis for peremptory challenge. *Rodgers v. State*, 725 S.W.2d 477 (Tex.App.—Houston [1st Dist.], 1987) (not yet reported). The fact that the prosecutor observed this individual smiling at the appellant at the time of the voir dire examination also provides a neutral explanation for the prosecutor's striking that individual. *Chambers v. State*, 724 S.W.2d at 442. The trial judge, having heard the evidence and having been charged with the responsibility for the determination of the facts and the credibility of the witnesses, found the explanations as to each of the jurors challenged peremptorily by the State to be sufficient to satisfy the State's burden under *Batson*. Under these circumstances, we cannot interpose our judgment. Appellant's first point of error is overruled.

■ In his second point of error, the appellant argues that the trial court erred during the punishment phase when, over objection, it instructed the jury as to the existence and possible effects of the law regarding parole. Appellant contends that these instructions violate the constitutional doctrine of separation of powers and also involve a denial of the appellant's right to a fair and impartial trial by due process of law. The contentions raised by appellant in this point of error have been decided adversely to him by this Court. *See Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986, pet. granted); and *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. granted). For the reasons stated in *Joslin* and *Rose*, appellant's point of error is overruled.

The trial court's judgment is affirmed.

WHITHAM, J., files a concurring opinion.

WHITHAM, Justice, concurring.

Without qualification, I join the majority's opinion except its disposition of appel-

lant's complaint with respect to the instruction on parole and good time laws. However, I join the majority's opinion disposing of appellant's complaint with respect to the instruction on parole and good time laws in light of the majority's holding in *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. granted). Nevertheless, I remain of the opinion that article 37.07, section 4 of the Texas Code of Criminal Procedure is invalid and unconstitutional for the reasons expressed in my dissent in *Rose*.