**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Juan Dios CANTU, Defendant and Appellant.**

**No. 860052.**

Supreme Court of Utah.

Jan. 12, 1988.

Jo Carol Nesset–Sale, Salt Lake City, for defendant and appellant.

David L. Wilkinson and David B. Thompson, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from convictions on charges of aggravated robbery, Utah Code Ann. § 76–6–302 (1978), aggravated burglary, § 76–6–203, and aggravated assault, § 76–5–103.

Defendant testified that on December 22, 1984, he pried open a window in the victim's house and entered with two companions. He admitted taking a warm coat, but claimed that he left the house when he heard someone snoring in the bedroom. The victim, a 68–year-old woman, testified that defendant pulled her up to his face, demanded that she tell him where she kept her silver and gold, and then struck her in the forehead with a club and stabbed her once in the chest and once in the shoulder. She waited until her assailant left and then went to a neighbor's home to call the police. Her TV, wallet, Christmas gifts, several coats, and various household items were missing.

The police found defendant's jacket in the victim's house. It had blood stains which were consistent with the victim's blood. The victim identified defendant from a photo array shown her by the police, but failed to positively identify him in a lineup held eight months after the break-in.

Defendant moved to quash the jury panel on the ground that the selection procedure used did not ensure a fair cross-section.[1] Following a hearing on that motion, the trial judge supplemented the panel with two venirepersons with Hispanic surnames.

1. For discussion of this issue, *see State v. Tillman,* 750 P.2d 546 (Utah 1987).

One was challenged by defendant for cause, and the other was removed by the prosecution on a peremptory challenge. Defendant objected to that use of the peremptory challenge, claiming it was predicated upon race (both defendant and the challenged juror were Hispanic), and sought to have the prosecutor explain under oath the reason for his challenge. The trial court refused, stating that no reason need be given for a peremptory strike. *See* Utah R.Crim.P. 18(d). Defendant's motion for a mistrial was denied.

The jury was given an instruction on accomplice liability. Defendant took exception to the instruction, but did not state a specific objection. The jury returned a guilty verdict on all charges. Prior to sentencing, defendant was evaluated by Dr. Breck Lebegue and was found to be suffering from an undetermined mental illness. However, despite defendant's illness, Dr. Lebegue found him competent to face sentencing and found that he had been able to comprehend the nature of the proceeding at trial and to assist his counsel in preparing his defense. Defendant's motion to arrest judgment or modify the verdict to guilty and mentally ill was denied.

## I.

■ Defendant contends that the evidence was insufficient to support the verdict. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and reverse for insufficient evidence "only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Petree*, 659 .P.2d 443, 444 (Utah 1983).

■ Defendant testified that he entered the victim's house by prying open a window. In the house, the police found his jacket stained with the victim's blood. The victim identified defendant as her assailant. Thus, the evidence viewed most favorably to the verdict was not inconclusive, nor was it so inherently improbable that defendant

committed the crimes that we must, as a matter of law, reverse the conviction for insufficient evidence. *See State v. Howell*, 649 P.2d 91, 97 (Utah 1982).

■ Defendant specifically attacks his conviction of aggravated robbery, claiming that there was no evidence that anything was taken from the "person, or immediate presence" of the victim. The robbery statute, Utah Code Ann. § 76–6–301 (1978), provides in part: "Robbery is the unlawful and intentional taking of personal property in the possession of another *from his person, or immediate presence*, against his will, accomplished by means of force or fear." (Emphasis added.) Defendant argues that the above-emphasized language makes a *taking* from the "person, or immediate presence" of the victim an element that must be proved to establish aggravated robbery. We do not agree. Aggravated robbery is defined in Utah Code Ann. § 76–6–302 (1978):

(1) A person commits aggravated robbery if *in the course of committing robbery*, he:

(a) Uses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon; or

(b) Causes serious bodily injury upon another.

. . . .

(3) For the purposes of this part, *an act shall be deemed to be "in the course of committing a robbery" if it occurs in an attempt to commit*, during the commission of, or in the immediate flight after the attempt or commission of a robbery.

(Emphasis added.) Our statutory scheme does not require proof of all elements necessary to prove a robbery, specifically, a taking from the "person, or immediate presence," to establish the "in the course of committing a robbery" requirement of aggravated robbery. So long as there is an *attempt*, coupled with the use of a firearm, knife, facsimile thereof, or another deadly weapon, or the accused causes serious bodily injury, the elements of aggravated robbery are satisfied. When defendant accost-

ed the victim with a knife and club and demanded to know where she kept her silver and gold, that constituted an attempt since it was a "substantial step toward commission of the offense." Utah Code Ann. § 76–4–101 (1978). The attempt was sufficient to bring defendant's actions within the "in the course of committing a robbery" language of section 76–6–302. The use of a knife satisfies the additional element; therefore, there was sufficient evidence on the elements of aggravated robbery to support the conviction.

## II.

■■■ Defendant next assails the giving of jury instruction No. 28, regarding accomplice liability. The instruction read:

### Instruction No. 28

You are instructed that not only every person who directly commits the criminal act, but also any person, acting with the mental state required for the commission of the offense, who solicits, requests, commands, encourages or intentionally aids another person to engage in the conduct which constitutes an offense, shall be criminally liable as a party for such conduct.

At trial, upon reviewing the instructions, defendant's counsel stated: "Your Honor, the defense would take exception only to those given which are parties instructions, including elements of each of the offenses as well as the separate culpability definition of parties."

Rule 19(c) of the Utah Rules of Criminal Procedure states:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, *stating distinctly the matter to which he objects and the grounds of his objection.* Notwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice.

(Emphasis added.) Defendant now argues that the evidence did not support the giving of instruction No. 28. However, at trial, no specific grounds for the exception taken to that instruction were stated. Rule 19(c) requires more than a general exception to the instructions. It requires that the matter excepted to and the ground therefor be distinctly stated. *See State v. McCardell,* 652 P.2d 942 (Utah 1982); *cf. State v. Schoenfeld,* 545 P.2d 193 (Utah 1976) (decided prior to rule 19(c)). When the defendant's counsel does not give a basis for objecting to the instruction, the trial court does not have the benefit of having the issue clearly framed and argued by counsel before ruling. Unless the error must be recognized to avoid a manifest injustice, this Court will not review an instruction unless a timely, specific objection to it was made at trial. *State v. Kazda,* 545 P.2d 190 (Utah 1976); *see Redevelopment Agency of Salt Lake City v. Barrutia,* 526 P.2d 47 (Utah 1974). Under the above-stated standard, defendant has not properly preserved the issue for appeal.

## III.

■■■ Defendant also contends that the trial court erred in failing to grant his motion to arrest judgment. Rule 23 of the Utah Rules of Criminal Procedure provides in part:

At any time prior to the imposition of sentence, the court upon its own initiative may, or *upon motion of a defendant shall, arrest judgment if* the facts proved or admitted do not constitute a public offense, or *the defendant is mentally ill,* or there is other good cause for the arrest of judgment. . . .

(Emphasis added.) Upon motion by defendant's counsel, the court appointed Dr. Breck Lebegue to determine if defendant was presently mentally ill, whether he was competent to proceed to sentencing, and whether he had been competent during trial. Dr. Lebegue found that defendant appeared to be suffering from an undetermined type of mental illness but that he had a full appreciation of the nature and consequences of the sentencing process and punishment specified for the offenses for which he was convicted and was competent to proceed to sentencing. The doctor also found that he had been able to comprehend the nature of the proceedings at trial

and had been able to assist his attorney in preparing his defense.

The trial court ruled that defendant "was not mentally ill to the point that he was incapacitated in not understanding at the time of trial.... And he was not in such a mentally ill condition that he was not able to assist counsel...." The trial court's view of "mental illness" as a matter of degree is consistent with how mental illness is dealt with in other statutes. Utah Code Ann. § 77–16–2 (1982) deals specifically with postconviction mental examination of a defendant and provides in part:

> (2) If the report or other evidence presented to the court discloses that the defendant suffers from any form of mental disease or defect which substantially contributed to the commission of the offense, *but which was not of such magnitude as to preclude sentence* ... the judge shall ... order him committed to the Utah state prison or other facility....

(Emphasis added.) Utah Code Ann. § 76–2–305 (1978, Supp.1987) provides that mental illness is a defense only if the defendant *lacks capacity* to form mental intent.

As it relates to legal consequences, mental illness is viewed in terms of competency. Utah Code Ann. § 77–15–1 (1982) states: "No person who is incompetent to proceed shall be tried or punished for a public offense." "Incompetent to proceed" is defined in section 77–15–2 as the "inability to comprehend the nature of the proceedings against him or the punishment specified ... or ... inability to assist his counsel in his defense." Since the alienist specifically found defendant competent under this standard, the trial court did not err in refusing to arrest judgment despite the fact that defendant may have suffered from an undisclosed "mental illness."

### IV.

■ Defendant's final contention is that the prosecution used an "inappropriate racial, racist method to select the jury" by using a peremptory challenge to remove a panel member with a Hispanic surname. He relies on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which modifies and clarifies *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *reh'g denied*, 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965), by disavowing those cases which interpreted *Swain* to require the defendant to show a repeated striking of minorities over a number of cases in order to show a violation of equal protection. Under *Batson*, a defendant may establish a prima facie case of purposeful discrimination based solely on evidence concerning the prosecution's exercise of peremptory challenges at the defendant's trial. *Batson*, 476 U.S. at 85, 106 S.Ct. at 1716, 90 L.Ed.2d at 80.

To attack a peremptory challenge under *Batson*, the defendant must establish a prima facie case by showing (1) that he is a member of a cognizable racial group, (2) that the prosecution exercised peremptory challenges to remove from the panel members of the defendant's race, and (3) that all the relevant facts and circumstances raise an inference that the prosecution used its peremptory challenges to exclude the veniremen from the petit jury on account of their race. As in any equal protection case, the burden is on the defendant to prove the existence of purposeful discrimination. *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85; *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Tarrance v. Florida*, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903). The defendant may rely on the fact that the use of peremptory challenges permits those who are of a mind to discriminate to do so, *Batson*, 476 U.S. 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87; *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247 (1953), to help overcome the presumption that the prosecution has exercised its peremptory challenges properly; however, the burden of establishing a prima facie case of discrimination lies with the defendant. If he meets that burden, the prosecution must then come forward with a racially neutral reason related to the particular case to be tried to explain the challenge. *Batson*, 476

U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

Although *Batson* imposes some limitation on the use of peremptory challenges, "we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. (For cases approving of the prosecution's stated reasons for peremptory challenges, see *People v. Tally,* 152 Ill. App.3d 971, 105 Ill.Dec. 800, 504 N.E.2d 1318 (1987); *Chambers v. State,* Tex.App., 724 S.W.2d 440 (1987); *Townsend v. State,* Tex.App., 730 S.W.2d 24 (1987); *Grady v. State,* Tex.App., 730 S.W.2d 191 (1987)). Although *Batson* had not been decided when the instant case was tried, *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), makes *Batson* applicable to cases pending on direct appeal.[2]

In applying *Batson* retroactively, we will examine the record to determine if all the "facts and circumstances" raise the inference that the prosecution used its peremptory challenges in a racially discriminatory manner. While we recognize that the trial court may be in a better position to make that determination initially, an evidentiary hearing held after remand could not recreate all the "facts and circumstances" as they existed at the time the challenge was made. Since the trial court would have to rely primarily on the record, we decline to follow the approach suggested by Judge Orme in his dissent to this opinion. *See United States v. Allen,* 814 F.2d 977 (4th Cir.1987).

Defendant meets the first prong of the test: He is Hispanic. Hispanics or Spanish-surnamed persons are a "cognizable racial group" for purposes of equal protection analysis under *Batson.*[3] *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51

L.Ed.2d 498 (1977); *Fields v. People,* 732 P.2d 1145 (Colo.1987). The excluded panel member was one of two people with Hispanic surnames picked to supplement the jury venire.[4] Although the challenged panel member, Mr. Lopez, was a native-born American and did not respond when the panel was asked if any of them considered themselves a member of a minority group, he did concede that he was of Hispanic ancestry.

The second part of the test, whether all the relevant facts and circumstances in the case raise the inference that the challenge was racially based, requires a careful reading of the record. At the hearing on defendant's motion to quash the panel (which was held before the peremptory challenges were exercised), defendant presented witnesses who testified that prosecutors often strike minority members from the jury panel. Defendant also entered into evidence an instruction booklet from the prosecutor's office which attempted to give general classifications for prospective jurors. It rated minorities as poor jurors for blue collar crimes. However, it also rated minorities as good jurors for white collar crimes and contained no general instruction to exclude minorities from the jury panel. No evidence was presented that the prosecutor in this case relied on these general guidelines or even knew of their existence.

■■■■ The prosecutor presented evidence that he did not strike minorities as a matter of policy and that he had recently tried a case before the same judge in which minority members served on the jury. While *Batson* rejects the idea that the defendant must show a pattern of discrimination in previous cases, the existence or lack of such a pattern is relevant in determining discriminatory intent. In *Batson* and other cases raising this issue, a pattern of discrimination was established by the use of

2. *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), declined to apply *Batson* retroactively to habeas corpus petitions.

3. We reserve judgment on whether Hispanics are a distinctive group under sixth amendment fair cross-section analysis. *See State v. Tillman,* 750 P.2d 546 (Utah 1987).

4. Since the prosecution did not raise the issue on appeal, we do not address the validity of the court's decision to supplement the venire or the procedures used.

multiple peremptory challenges of minority members within a single case. *See Batson,* 476 U.S. 97, 106 S.Ct. at 1723, 90 L.Ed. at 88. In the instant case, only a single challenge is questioned. While a single challenge based on race is impermissible, *People v. Brown,* 152 Ill.App.3d 996, 1001, 106 Ill.Dec. 91, 94, 505 N.E.2d 397, 400 (1987),[5] the mere fact that the subject of the peremptory strike is a minority member does not alone raise the inference of discriminatory intent. "[I]t is not unconstitutional, without more, to strike one or more [Hispanics][6] from the jury." *Batson,* 476 U.S. at 79, 106 S.Ct. at 1725, 90 L.Ed.2d at 91 (White, J., concurring).

 It is insufficient that the prosecution merely challenged a prospective juror who is of the same race as defendant. The facts and circumstances surrounding the use of the challenge must raise the inference that the prosecution used the peremptory challenges to exclude a person from the petit jury on account of his or her race. *United States v. Ratcliff,* 806 F.2d 1253 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1625, 95 L.Ed.2d 199, *reh'g denied,* — U.S. —, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987). Defendant argues that there was nothing about Lopez to which the prosecution could have had any objection: he was a member of the L.D.S. church; he studied accounting at L.D.S. Business College; he was married and had a steady job; and he lived within a few blocks of another juror whom the prosecution allowed to sit on the jury. Since there appears to be no other basis for the challenge, defendant claims the inference is raised that the challenge is based on race. While the facts that he was married and held a job may fit the defense attorney's profile of a pro-prosecution juror, the facts that Lopez and one of the other jurors knew each other, had prior associations, lived in the same neighborhood, and went to the same church are sufficient to justify a peremptory challenge based on how their prior association may affect the group dynamics on the jury panel. This concern was explored on voir dire. It was a racially neutral factor that affected Lopez's desirability as a juror. When asked if he considered himself a member of a minority group, Lopez, a native-born American, indicated that he did not. Only when pressed on the point did he concede that his ancestry was Hispanic. There is no indication on the record that Lopez appeared Hispanic or spoke with an accent;[7] therefore, the writer concludes that the facts and circumstances surrounding the challenge fail to raise the inference of discriminatory intent.

However, Justice Zimmerman and Justice Durham are of the opinion that defendant carried his burden and established a prima facie case. Since Judge Orme's view, in which the Chief Justice joins, also calls for a remand, the case is remanded to the trial court to determine if the exercise of the peremptory challenge violated defendant's right to equal protection under *Batson.*

Should the trial judge find on remand that the peremptory challenge was *not* used with discriminatory intent, but was based on any racially neutral reason, the sentence and conviction shall be affirmed. Should the trial judge find that the challenge was racially motivated, in violation of defendant's right to equal protection as defined in *Batson,* then a new trial is ordered, unless the judge also finds the deprivation of defendant's constitutional right to be "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Remanded with instructions.

---

**5.** But see *Booker v. Jabe,* 775 F.2d 762, 771–72 (6th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), where a single challenge may be insufficient to show a violation of a defendant's sixth amendment rights. *Cf. Fields v. People,* 732 P.2d at 1158 n. 20.

**6.** *Batson* involved a black defendant and the removal of four black persons from the jury venire.

**7.** Defendant has the burden to preserve his points on appeal by making an adequate record below. *People v. Brown,* 152 Ill.App.3d 996, 1002, 106 Ill.Dec. 91, 95, 505 N.E.2d 397, 401 (1987); *People v. Smith,* 42 Ill.2d 479, 248 N.E. 2d 68 (1969).

ZIMMERMAN, Justice: (concurring in the result).

I concur in the majority's disposition of all of defendant's contentions on appeal, and I concur that the matter must be remanded. I write to explain my view of the proper resolution of defendant's challenge to the prosecution's use of one of its peremptories to remove a panel member with a Hispanic surname. I think the evidence presented by defendant was sufficient to "raise an inference that the prosecutor used the [peremptory challenge] to exclude [Mr. Lopez] from the petit jury on account of [his] race." *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Presumably because *Batson* had neither been decided nor made retroactive at the time of trial, the prosecutor made no attempt to rebut the inference raised by defendant's showing. In dictum, Justice Howe's opinion strives to do the prosecutor's work for him by speculating as to why the juror was struck, based on what little evidence there is in the record. I find this explanation unpersuasive. On remand, I would direct the trial court to consider the defendant to have met his burden. Because neither *Batson* nor *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), which made *Batson* retroactive, *id.* 107 S.Ct. at 710, 716, had been decided at the time of the trial, the prosecutor should be given an opportunity to rebut the inference. Once this is done, the trial judge can proceed to rule on the question under *Batson.*

DURHAM, J., concurs in the concurring in the result opinion of ZIMMERMAN, J.

ORME, Court of Appeals Judge: (concurring and dissenting).

I concur in parts I through III of the main opinion, but am not in accord with the view taken in part IV of that opinion. I agree with Justices Zimmerman and Durham that the case should be remanded, but do not share their conclusion that remand should be for the limited purpose of giving the prosecutor an opportunity to rebut the inference of racial motivation which they find to be present in this case.

In my view, the threshold question of whether the record establishes an inference of racial motivation should be decided by the trial court.[1] This was the approach taken in *United States v. Allen,* 814 F.2d 977 (4th Cir.1987) (per curiam). I agree with *Allen* that "factual contentions of this nature are best resolved in the district court." *Id.* at 978. I also agree with the suggestion in *Allen* "that trial judges, experienced in supervising *voir dire,*" are in a better position to evaluate whether a particular peremptory challenge gives rise to a prima facie case of impermissible racial motivation in connection with its exercise. *Id.* (quoting *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986)).

I would follow *Allen* and remand for plenary consideration of whether the peremptory challenge of Mr. Lopez was unconstitutional in light of the doctrine announced in *Batson.*

HALL, C.J., concurs in the concurring and dissenting opinion of ORME, J.

STEWART, Associate C.J., does not participate herein; GREGORY K. ORME, Court of Appeals Judge, sat.

---

1. In concluding that this Court, rather than the trial court, should determine whether an inference of racial discrimination has been shown in the exercise of a peremptory challenge, the main opinion correctly observes that the trial court would also "have to rely primarily on the record." I am unable to agree that trial courts are, for this reason, in no better position to decide the question than are appellate courts. Trial judges have more experience with *voir dire* and the impanelling of juries and therefore an acquired expertise which appellate judges, as a group, may lack. In addition, in most remand situations, the same judge who presided over the case originally will have to decide the *Batson* question on remand. That judge may well have some independent recall of the actual circumstances of, and persons and personalities involved in, the particular jury selection process.