THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH E. CHITWOOD, Defendant-Appellant.

Fourth District    No. 4—86—0073

Opinion filed October 20, 1986.—Rehearing denied November 19, 1986.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

After a jury trial, defendant was convicted of three counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(a)(1)). The trial court sentenced him to seven years' imprisonment. He appeals arguing that section 12—16(a)(1) of the Criminal Code of 1961 is unconstitutional; that he was not proved guilty beyond a reasonable doubt; that the trial court erred in admitting evidence; that he received ineffective assistance of counsel; that the trial court abused its discretion in sentencing; and that he is entitled to a credit against his fine.

We affirm.

An information alleging that defendant committed aggravated criminal sexual abuse was filed. Subsequently the State filed an amended three-count information. At the trial Donald McQueen testified that on September 23, 1985, defendant, who was staying at McQueen's sister's apartment, called McQueen and told him to come to the apartment. McQueen went to the apartment and knocked on the door. Defendant, standing slightly behind the door, opened it, and McQueen could see he was not dressed and had a six-inch knife with a three-inch blade in his hand. Defendant was within arm's reach of McQueen and ordered him to enter. McQueen stated that he was frightened and did not know why he did not run away. After he entered the apartment, defendant ordered him to undress. Defendant told McQueen that he had heard McQueen engaged in oral sex and ordered McQueen to sit on the bed. Defendant moved closer to McQueen. He then waived the knife in close proximity to the victim's penis. Defendant repeatedly stated that he had heard McQueen engaged in oral sex, fondled McQueen's penis, and asked McQueen to cooperate. McQueen further testified that he then tried to strangle defendant and as he did so, defendant dropped the knife and McQueen picked it up. Defendant then said he had a gun in his shoe or boot, walked toward his shoe, and

although McQueen didn't see a gun, he gave the knife back to defendant.

After McQueen gave the knife back, defendant again requested McQueen engage in sexual conduct with him. McQueen refused, and defendant became angry. However, he told McQueen to dress, and after McQueen dressed, defendant hit him with his fist and cut his lip with the knife. McQueen further testified that he thought he was hit first, then cut. The cut left a scar.

On cross-examination McQueen stated that he was sure he was cut by the knife. McQueen agreed that the doorway of the apartment was near a staircase and it would have been easy for him to run when defendant opened the door. Defense counsel then questioned McQueen at length about the difference in his description of the conduct which he gave to the police and his description at trial. McQueen testified essentially that he thought the terminology which he used in reporting the offense to the police and the terminology which he used at trial meant the same act.

McQueen further stated that he was 6 feet 2 inches tall and weighed 217 pounds. He thought defendant was about 5 feet 8 inches tall. McQueen admitted that he had been in two fights in his life and had been able to defend himself. He had three or four drinks that evening but was not drunk.

Dennis Bingheim, a police officer, testified that he took McQueen's statement on September 23, 1985. McQueen was wearing a blood-stained shirt, had a cut on his mouth, and was not intoxicated. The deeper part of the cut looked like a knife cut or a cut from a sharp instrument. Bingheim stated that McQueen was nervous and upset, hesitant in answering some questions but forcefully negative in answering other questions. When asked about specific sexual acts, McQueen became very hesitant and embarrassed. When McQueen answered affirmatively, he was quiet and timid; when he answered negatively about sexual conduct, he was strong in denying the conduct. The police did not find a knife or gun when they searched defendant's residence.

On cross-examination defense counsel asked Bingheim whether he had an opinion about why McQueen answered questions in a hesitant manner. Bingheim responded that he had an opinion. Defense counsel asked what that opinion was, and Bingheim responded that he thought McQueen was embarrassed and scared. Defense counsel then asked whether it was possible that McQueen did not want to lie to the police. Bingheim responded that he believed McQueen did not want to lie to him.

On redirect examination the prosecution asked whether in Bingheim's opinion, given McQueen's demeanor, Bingheim believed he was truthful. Bingheim stated that he believed McQueen was telling the truth.

Defendant did not object during any of this questioning.

Defendant testified in his own behalf, stating that he had not asked McQueen to come to the apartment. McQueen arrived at the apartment, asked for his sister, and said he needed money. Defendant told McQueen that he did not have any money, and McQueen, who had a drinking problem and had been drinking, became abusive and demanded money.

Defendant further stated that because it was warm and he had only one set of clothing, he had been watching television while wearing only his underwear. After he let McQueen into the apartment, he went back to lying on the edge of a bed. McQueen grabbed defendant from behind and started choking him when defendant moved suddenly to get a cigarette. Defendant forced McQueen to release him. After McQueen again asked for money and defendant told him to leave, McQueen made an offensive remark about his sister. At this point defendant hit McQueen twice in the face and pushed him out the door.

Defendant further stated that he had been previously convicted of aggravated battery and home invasion. He had never owned a knife or gun and had never asked McQueen to engage in sexual conduct. On redirect examination defendant stated that he might have owned a knife on a previous occasion when he lived with McQueen's sister.

Mark Miller testified that he was an attorney who did part-time investigatory work. When Miller talked to McQueen, McQueen stated that he remembered being hit on the nose, then feeling the cut on his lip. However, he never saw a knife cut him. Shirley Simmons testified in rebuttal that defendant had a knife, 6 to 8 inches long, when he stayed with her in August or September.

The jury returned guilty verdicts on all counts, and after a sentencing hearing, the trial court sentenced defendant to seven years' imprisonment and imposed a $20 fine pursuant to the Violent Crime Victims Assistance Act (Ill. Rev. Stat. 1985, ch. 70, par. 501 et seq.).

Initially, defendant argues that section 12—16(a)(1) of the Criminal Code of 1961 (Code) is unconstitutional because it punishes more severely the threat of the use of force in coercing sexual conduct than the actual use of force would be punished under section 12—15(a) of the Code. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—16(a)(1), 12—15(a).) Defendant maintains that there is no rational basis for the more severe penalty and that he is similarly situated with those accused of violating

section 12—15 of the Code. Therefore, the section violates due process and equal protection. The State responds that a rational basis exists for punishing aggravated criminal sexual abuse more severely than criminal sexual abuse and that the two classes of defendants are not similarly situated.

We agree.

Section 12—15(a)(1) of the Code states:

"Criminal Sexual Abuse. (a) The accused commits criminal sexual abuse if he or she:

(1) commits an act of sexual conduct by the use of force or threat of force." (Ill. Rev. Stat. 1985, ch. 38, par. 12—15(a)(1).)

A first offense is a Class A misdemeanor. (Ill. Rev. Stat. 1985, ch. 38, par. 12—15(c).) Section 12—16(a)(1) states:

"Aggravated Criminal Sexual Abuse.

(a) The accused commits aggravated criminal sexual abuse if he or she commits criminal sexual abuse as defined in subsection (a) of Section 12—15 of this Code and any of the following aggravating circumstances existed during the commission of the offense:

(1) the accused displayed, threatened to use or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(a)(1).)

Aggravated criminal sexual abuse is a Class 2 felony. Ill. Rev. Stat. 1985, ch. 38, par. 12—16(e).

■■■ Although a State may not arbitrarily discriminate against similarly situated persons under the guise of classification of offenses (*People v. Henson* (1985), 136 Ill. App. 3d 183, 482 N.E.2d 1044), statutes are presumed to be constitutional. It is the duty of the courts to construe statutes so as to affirm their constitutionality and validity if such a construction can reasonably be done. (*People v. Bales* (1985), 108 Ill. 2d 182, 188, 483 N.E.2d 517, 519-20.) If there is any doubt about the construction of a statute, the doubt will be resolved in favor of the validity of the statute. (108 Ill. 2d 182, 483 N.E.2d 517.) The test to determine whether a rational basis exists for different classifications of offenses is whether the classifications are reasonably drawn and provide penalties which are not so disproportionate to the offense that they shock the conscience of reasonable men. (*People v. Henson* (1985), 136 Ill. App. 3d 183, 482 N.E.2d 1044; *People v. Lanners* (1970), 122 Ill. App. 2d 290, 258 N.E.2d 390.) However, the legislature may determine which acts constitute a more serious threat to the public and pun-

ish those acts more severely. *People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.

Defendant argues that since the statutes provide a more severe penalty for the mere threat of the use of force with a weapon under section 12—16(a) than the actual use of force under section 12—15(a), the classification is not reasonable, the disproportionate punishment shocks the conscience of men, and thus the statute violates the due process clause.

■ Criminal sexual abuse is an included offense of aggravated criminal sexual abuse. Section 12—15 provides that a person may commit criminal sexual abuse when he coerces sexual conduct by the use of force or the threat of the use of force. When the coercion is accompanied by an aggravating factor, which is the use of or the threat of the use of a weapon, the conduct becomes aggravated criminal sexual abuse. We believe that the legislature rationally determined that the threat of the use of force with a dangerous weapon has a greater potential for harm than the actual use of force absent any weapon. We note that the legislature could have considered that the commission of the offense with a weapon has a greater potential for escalation, for actual physical injury to the victim involved, and for greater psychological trauma to the victim.

■ Defendant also argues that section 12—16(a) of the Code violates concepts of equal protection and thus is unconstitutional. He maintains that those charged with criminal sexual abuse and those charged with aggravated criminal sexual abuse are similarly situated. Defendant's argument has little merit. The equal protection clause does not deny the State the power to classify offenses and offenders in the exercise of its police power. If any stated facts would justify a disparate classification, the classification must be upheld. (*People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) Here, the presence of a weapon or object fashioned to be a weapon distinguishes between those accused of violating section 12—15 of the Code and those accused of violating section 12—16 of the Code. The legislature could rationally have concluded that offenders who use a weapon in committing such offenses are a greater threat to society. Therefore, the two classes of defendants are not similarly situated for equal protection purposes.

■ Defendant next argues that he was not proved guilty beyond a reasonable doubt because McQueen's testimony was incredible and unworthy of belief. Credibility is a jury question. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 67, *cert. denied* (1979), 442

U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) When presented with a challenge to the sufficiency of the evidence in a criminal case, the relevant question for the appellate court is whether any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. The court should consider all of the evidence in a light most favorable to the prosecution. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267, *rehearing denied* (1985), 474 U.S. 1027, 88 L. Ed. 2d 567, 106 S. Ct. 585.

■ Here, McQueen stated that he was frightened, believed defendant's threats, and believed defendant would hurt him. The jury knew of the comparative physical size difference between the two men. Their versions of what happened were exactly contrary to each other. McQueen's account, however, was corroborated by his prompt report of the incident to the police. The testimony of one witness, if positive and credible, is sufficient to sustain a conviction even though the accused contradicts the witness. (*People v. Banks* (1985), 138 Ill. App. 3d 994, 486 N.E.2d 953.) The jury determined the credibility issues against defendant, and the evidence supported this determination.

■ Defendant next argues that the trial court erred in admitting Bingheim's opinion testimony on redirect examination and in allowing the State to impermissibly bolster McQueen's testimony. The opinion testimony which defendant complains of in this court was a continuation of a line of questioning which defendant initiated. An accused cannot complain of the admission of testimony which was invited by his own tactics at trial. (*People v. Jones* (1983), 119 Ill. App. 3d 615, 628, 456 N.E.2d 926, 936-37.) Since it is the jury's function to determine the credibility of witnesses, asking Bingheim if he thought McQueen was lying when he reported the incident was improper. (See *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025.) However, the error was invited by defendant's conduct (*People v. Jones* (1983), 119 Ill. App. 3d 615, 456 N.E.2d 926) and therefore does not warrant reversal.

■ Defendant next argues that he was denied a fair trial when the trial court admitted Bingheim's testimony referring to McQueen's report of sexual conduct. Defendant characterizes Bingheim's testimony as evidence of a prior out-of-court consistent statement. Absent an allegation of recent fabrication, the trial testimony of a witness may not be bolstered by establishing that the witness made a prior consistent out-of-court statement. (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41.) Bingheim's statements on direct examination concerned principally the demeanor of McQueen when answering ques-

tions about the alleged sexual conduct. Bingheim did not relate what McQueen said occurred. He referred to McQueen's statements of sexual activity as a report of "sexual conduct." Therefore, Bingheim's statements are distinguishable from the type of bolstering testimony held to be impermissible by the courts. Those statements include specifically what the witness said at a previous time. (See 97 Ill. 2d 487, 455 N.E.2d 41.) The trial court did not err in admitting testimony.

■■ ■ Defendant next argues that he was denied effective assistance of counsel when his trial counsel stated that he would not have called McQueen's mother and brother as reputation witnesses even if subpoenas could have been served upon them. In order to establish an ineffective-assistance-of-counsel claim, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced the defense. It is not enough to show that the deficiencies may have had a conceivable affect on the outcome of the proceedings. The defendant must show that, absent trial counsel's error, there is a reasonable probability that the result of the proceeding would have been different. (*People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) A review of counsel's competency usually does not extend to the exercise of his judgment, discretion, or trial tactics. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) A decision about which witnesses to call involves trial tactics. *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.

■■ In the instant case, McQueen's mother and brother were subpoenaed, but the subpoenas were not served. Defense counsel stated that he would not have called them anyway, as a matter of judgment, and he did not believe such reputation testimony was admissible. Defendant maintained that the witnesses could have testified about McQueen's drinking, lying, and stealing, and that McQueen did not receive a telephone call on September 23, 1985. The second defense counsel did not raise this issue in the post-trial motion. He noted that after talking to the prospective witnesses, he determined that neither had been home that afternoon. It is permissible to show that a witness had a bad reputation for truth or honesty. (*People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473.) However, here, defendant speculates that the witnesses' testimony would have affected the outcome of the trial. An allegation of ineffective counsel may not be based upon speculation. (*People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) Defendant received effective assistance of counsel and has not established prejudice.

■■ Defendant next argues that the trial court abused its discre-

tion in sentencing him by entering judgment on an offense for which he had not been charged or convicted and by considering an improper aggravating factor. The argument is without merit.

The trial judge in sentencing stated that he considered that defendant "displayed" force in committing the offense. Defendant argues that since the jury found that he threatened the use of force, not that he "displayed" force, the court sentenced him on an uncharged offense for which he had not been convicted. Defendant did not object at sentencing to the court's phrasing. Therefore, he waived review of this issue. (*People v. Howard* (1982), 107 Ill. App. 3d 936, 438 N.E.2d 580.) Secondly, defendant was convicted of threatening the victim by displaying or waiving the knife around. Defendant was, in effect, convicted of threatening the victim by displaying force. Defendant is arguing a matter of semantics rather than a matter of substance.

Additionally, defendant, relying upon *People v. Allen* (1981), 97 Ill. App. 3d 38, 422 N.E.2d 254, argues that the trial court abused its discretion in sentencing because it improperly considered the element of force or the threat of force as an aggravating factor. We find that the trial court properly considered the *nature* of the threat of force to the victim as an aggravating factor. (*People v. Saldivar* (1986), 113 Ill. 2d 256.) The sentence was within the statutory guidelines, and the trial court properly considered defendant's extensive record of prior criminal convictions.

Lastly, defendant argues that, pursuant to section 110—14 of the Code of Criminal Procedure of 1963, he is entitled to a credit against his fine. (Ill. Rev. Stat. 1985, ch. 38, par. 110—14.) Defendant was incarcerated on a bailable offense from the time of his arrest until trial. However, the fine was imposed pursuant to the Violent Crime Victims Assistance Act (Ill. Rev. Stat. 1985, ch. 70, par. 501 *et seq.*). Section 10(b) states that fines imposed pursuant to the Act on those convicted of applicable felonies after January 1, 1984, are not subject to the provisions of section 110—14 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 70, par. 510(b)(2).) A jury convicted defendant of the instant offense in December of 1985. Thus the fine is not subject to a credit.

For the above reasons, we affirm the trial court.

Affirmed.

WEBBER and GREEN, JJ., concur.