THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MAURICE CHEVALIER, Defendant-Appellant.

Fourth District   No. 4—86—0722

Opinion filed August 6, 1987.

343

Daniel D. Yuhas and Leia M. Norton, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

A jury convicted defendant of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)). He appeals, arguing: he was not proved guilty beyond a reasonable doubt; he was denied a trial by an impartial jury, because the trial court refused to grant his challenge for cause of certain jurors, because the trial court granted the State a greater number of peremptory challenges than it granted defendant, and because the trial court refused to require a neutral explanation of a peremptory challenge of a black venireman; the trial court's limitation of cross-examination of the complainant denied him a fair trial;

and the trial court erred in allowing the State to impeach its own witnesses.

We affirm.

Defendant was charged with aggravated battery in connection with the shooting of Stephen Reid. A black venireman was a member of the first panel of four questioned by the State. The venireman stated that he was unemployed and divorced. He did not know anyone at the State's Attorney's office, had no pending litigation, no connection with law enforcement, and did not know the defendant or victim. He would eliminate sympathy and bias from his decision and would follow the trial court's instructions. He had never been the victim of a crime. The prosecutor challenged the venireman. Defense counsel objected to the challenge and asked for a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

The trial court excused the venireman, telling counsel that it would discuss the hearing at a recess. Defense counsel requested an immediate hearing. The court agreed and stated the venireman had been challenged on a number of juries. The court then stated that unemployment could be considered by counsel and noted that several black jurors had served on trials conducted by the prosecutor that week. Defense counsel argued unemployment was not a valid reason to peremptorily challenge a juror and the prosecutor was required by *Batson* to justify the peremptory challenge. The prosecutor noted that defendant had to raise an inference of improper motivation prior to the State's being obligated to justify the challenge. Defense counsel stated that he would proceed if he could have the hearing.

The court noted that previous juries selected by the prosecutor had contained minorities and the venireman in question had been excused from other cases. Subsequently, the trial court noted that a black woman was serving on defendant's jury. This refuted defendant's argument that black persons were automatically disqualified. The court denied the objection.

Defense counsel, during *voir dire*, moved that the trial court dismiss for cause eight jurors who had served on juries within the past year, including those members of the present impanelment who had been on juries within the last two weeks. The court refused to grant a challenge for cause for this reason.

Prior to defendant's use of his seventh peremptory challenge, the State exercised an eighth peremptory challenge. Defendant contended the State had exceeded its allowable peremptories. Defense counsel asked the court to recall the excused juror. The court refused to do so. The judge stated that he was exercising his inherent powers in ex-

tending the seven peremptory challenges allowable by the supreme court rule to eight in the instant case. The court stated it had misled the prosecution previously and requiring the prosecutor to recall an excused juror would place him in an untenable position. Defense counsel exercised seven peremptory challenges. The court later noted that defense counsel had refused to exercise an eighth peremptory challenge. The court denied defense counsel's motion for a mistrial based upon the prosecutor's use of eight peremptory challenges.

Stephen Reid ·testified that during the early afternoon hours of April 13, 1986, he was visiting friends and drank four beers. He then went home, where he ate dinner. He remained at his house for approximately 1½ hours, during which time he did not drink any liquor. At about 9:30 p.m., while Reid was walking to a friend's house, he was shot by a person standing across the street in a group of four or five people. It was dark and the street had few lights. Reid identified defendant as his assailant and also recognized other members of the group. Reid could see fire coming from the gun as defendant shot it.

After Reid identified defendant, the following exchange occurred:

"Q. Are you *** now, you had been drinking that night, and it was a bit dark, are you sure this is the same individual?

A. If that ain't him, it's his brother."

On cross-examination, Reid stated that he did not know the police had talked to him at 8:30 p.m., not 9:30 p.m., on that night. He agreed that he had been drinking until approximately 7:30 p.m. and was intoxicated. The streetlights were on his side of the road. Reid further stated that he was not in court that morning. The court sustained an objection to questions concerning a warrant which had been issued for Reid's arrest.

On redirect examination, Reid stated that he was not wearing a watch that day. Defendant had a brother who looked like him. On re-cross-examination, Reid testified that he did not know defendant's brother. He then positively identified defendant as his assailant.

Felicia Johnson testified that defendant was visiting her on the day of the shooting. She, Jackie Kraus, and Joey Kraus witnessed the incident. No one else was with them. She and the others heard the shots and ran. The prosecutor asked Johnson if she remembered talking to a police officer. Defendant objected. Outside of the jury's presence, the defendant argued that the State could not impeach its own witness absent a finding that she was a hostile witness. The court allowed the impeachment. Johnson testified that she remembered talking to Officer Francis Schultz about the shooting. She denied telling Schultz defendant was present, grabbed the weapon from Joey Kraus,

and shot the person across the street.

Jackie Kraus testified that she was defendant's and Johnson's friend. In April 1986, she heard shooting and ran. Defendant was not with her, and she did not see anything. Kraus was impeached with her statement to Officer Vernell Bond. Kraus denied telling Bond that defendant was with them and threatened Reid.

Officers Schultz and Bond testified that Johnson and Kraus had made the impeachment statements. Schultz also testified that defendant ran when the police arrested him.

Defendant stated that he was 16 years old and from Chicago. On April 13, 1986, he was in Decatur but did not shoot Reid. He ran from police because he was afraid they would beat him. Defendant admitted being with Johnson, Jackie Kraus, and Joey Kraus on April 13. Someone had insulted Johnson and then defendant left. He was not with them when the shooting occurred.

Defendant argues that he was not proved guilty beyond a reasonable doubt because the identification testimony was doubtful, Reid said the assailant could be defendant's brother, Reid had been drinking, it was dark, and Reid's testimony was not corroborated. The State argues that the sufficiency of identification evidence is a question for the trier of fact and Reid positively identified defendant.

■■ ■ A positive identification by a single witness who had ample opportunity to observe is sufficient to support a conviction. (*People v. Chitwood* (1986), 148 Ill. App. 3d 730, 499 N.E.2d 992.) However, a conviction cannot be deemed sustained beyond a reasonable doubt if the identification of the accused is vague and doubtful. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) A conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402; *People v. Chitwood* (1986), 148 Ill. App. 3d 730, 499 N.E.2d 992.

■ When presented with a challenge to the sufficiency of the evidence in a criminal case, the relevant question for the appellate court is whether any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. The court should consider all of the evidence in a light most favorable to the prosecution. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277; *People v. Lilly* (1985), 139 Ill. App. 3d 275, 487 N.E.2d 414.) The *Collins* rule applies to questions about the sufficiency of identification testimony. *People v. Lilly* (1985), 139 Ill. App. 3d 275, 487 N.E.2d 414.

■ In the instant case, Reid admitted that approximately 1½ hours before the shooting he drank four beers, so was intoxicated. It was also dark. However, Reid stated the alcohol did not affect his memory or his recollection of defendant as the assailant. After Reid positively identified defendant as the assailant, he said that if the assailant was not the defendant, it was his brother. This statement can be taken to mean that he was unsure or to mean that he was very sure that defendant was his assailant. Drawing inferences from the evidence is a jury function. However, we note that upon cross-examination, Reid again positively identified defendant as the assailant.

■ Johnson, Kraus, and the defendant testified that defendant was not present at the time of the shooting. However, Johnson and Kraus were impeached with their prior inconsistent statements. Here, the jury elected to believe Reid's testimony, and the evidence viewed most favorably to the prosecution supports the verdict.

■ Defendant argues that he was denied his constitutional right to a trial by an impartial jury when the court failed to follow the provisions of section 14 of "An Act concerning jurors, ***" (Act) (Ill. Rev. Stat. 1985, ch. 78, par. 14). He maintains that the eight jurors he challenged for cause should have been excused because all had served on other juries in the preceding two weeks. Defendant maintains that the trial court's action prejudiced him by forcing him to use his peremptory challenges to excuse the jurors.

Section 14 of the Act states:

> "It shall be sufficient cause of challenge of a petit juror that he lacks any one of the qualifications mentioned in Section 2 of this Act; *or if he is not one of the regular panel*, that he has served as a juror on the trial of a cause in any court in the county within one year previous to the time of his being offered as a juror ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 78, par. 14.)

Statutes should be construed so that no word or phrase is rendered meaningless or superfluous. (*People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.) Defendant's interpretation of the statute deletes the phrase "or if he is not one of the regular panel." Here, all of the jurors were members of the current impanelment. Therefore, under the language of the statute, the fact that they had served on other juries within the past two weeks would not be the basis of a challenge for cause. (See also *Plummer v. People* (1874), 74 Ill. 361, 365; *Gropp v. People* (1873), 67 Ill. 154.) *People v. O'Malley* (1986), 143 Ill. App. 3d 474, 493 N.E.2d 82, cited by defendant, is inapposite. In that cause, the venireman had litigation pending but was not ex-

cused. The plain language of the statute and interpretations of the statute show that a venireman who was a member of the current impanelment need not be excused because he had served on other juries during that period.

■ Defendant argues that the court abused its discretion by allowing the State more peremptory challenges than it allowed defendant. Supreme Court Rule 434(d) provides that in a noncapital felony case, each side shall be allowed seven peremptory challenges. (107 Ill. 2d 434(d).) Here, the court stated that it would allow eight peremptory challenges because of a prior misunderstanding and because of a conflict between the statute and the rule. (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(e).) The trial court did not state that it would grant the prosecution eight peremptory challenges and restrict the defendant to seven. The record does not show that defendant sought to exercise an eighth peremptory challenge and was denied that opportunity. On the contrary, the record indicates that the defendant refused to take an eighth peremptory challenge because doing so would place him in violation of the rule.

The decision to grant challenges for cause or a request for additional peremptory challenges rests within the discretion of the trial court. (*People v. Pecina* (1985), 132 Ill. App. 3d 948, 477 N.E.2d 811.) A trial court may grant the parties additional peremptories in an effort to ensure a fair trial. *People v. Rohwedder* (1969), 106 Ill. App. 2d 1, 245 N.E.2d 282.

Defendant's trial was one of the last on the trial call for the two weeks of the venire. The court allowed eight peremptory challenges to prevent any unfairness caused by its previous decision. This decision was not an abuse of discretion. Additionally, defendant apparently decided not to exercise his last peremptory challenge. The defendant's contention that the State received more peremptory challenges than he did is not well taken.

■ ■ Defendant next argues that the trial court erred in failing to require the prosecutor to state a neutral explanation for his peremptory challenge of a black venireman. Defendant maintains that the trial court used the wrong standard to assess whether defendant had established an improper motive and defendant established a *prima facie* case of improper motivation for the peremptory challenge.

Under the holding of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, a defendant need not establish a repeated pattern of discriminatory challenges in several juries. The defendant may establish a *prima facie* case of purposeful discrimina-

tion in selection of a petit jury solely upon evidence concerning the exercise of peremptory challenges at his trial. To establish a *prima facie* case, the defendant must show that he is a member of a cognizable racial group and the prosecutor has used peremptory challenges to remove from the venire members of defendant's group. The defendant is entitled to rely upon a presumption that peremptory challenges allow those who wish to discriminate to do so. Finally, the defendant must show that these facts and any relevant circumstances raise an inference that the prosecutor used the practice to exclude veniremen on the basis of race. *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Brown* (1987), 152 Ill. App. 3d 996, 505 N.E.2d 397.

■ In deciding if a *prima facie* case has been established, the trial court should consider all of the relevant circumstances. These circumstances include any pattern of questions and any reasons for excluding the venireman. Once the trial court determines a *prima facie* case has been made, the burden shifts to the prosecutor to articulate a neutral reason for the peremptory challenge.

■ We agree that defendant failed to establish a *prima facie* case because he did not establish factors raising an inference of exclusion based on race. The challenged venireman had been excluded from a number of juries during the past two weeks. The prosecutor had selected black jury members before and a black person was on defendant's jury. Although the court did not specifically state that it found defendant had not raised an inference of improper motivation, it did not require the State to offer a neutral explanation. Defendant never articulated why he thought the challenge was evidence of an improper motivation. Both parties cited and argued *Batson* to the court. Implicit in the factors enumerated by the court in denying defendant's motion for a mistrial is a finding that defendant did not establish a *prima facie* case of discriminatory exercise of peremptory challenges. Under the circumstances presented here, we cannot say that the trial court abused its discretion in reaching this determination.

■ Defendant argues that the court used the wrong standard in assessing whether he had established a *prima facie* case. The fact that the court considered the prosecutor's conduct in past cases does not necessarily imply that it was reviewing the matter under a test articulated in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, but implies the court was following the *Batson* court's directive to consider all of the circumstances. The trial court also found the fact that a black woman was on the jury undercut defendant's argument that a blanket excusal of black veniremen was

taking place. This finding is also consistent with the *Batson* analysis.

Defendant argues and we agree that inclusion of one or two members of defendant's race in the jury does not insulate a prosecutor from an objection on the basis of a discriminatory peremptory challenge. (See *Fleming v. Kemp* (11th Cir. 1986), 794 F.2d 1478, 1483.) However, here the record does not state the race of all of the veniremen. It only states that one black person was challenged and one served on the jury. Defendant never articulated why he believed the challenge of the venireman was evidence of a discriminatory jury selection. As a prerequisite for establishing his *prima facie* case, such a statement is necessary.

■■■■ Defendant next argues that the trial court's limitation of his cross-examination of Reid denied him a fair trial. We disagree. Reid had not appeared to testify during the morning session of defendant's trial. A warrant issued for his arrest. During an offer of proof, Reid stated that he had been out of town that morning. He came to court with a detective, but he had not been arrested. Defendant argues that the arrest warrant was relevant to Reid's bias and that Reid was rewarded for testifying. The State moved to quash the warrant after trial. Therefore, defendant argues that he was denied his constitutional right to confront his accusers when the trial court restricted examination of Reid on this issue.

The right to cross-examine a witness about his bias or ulterior motives is protected by State and Federal constitutions. (U.S. Const. amend. VI; Ill. Const. 1970, art. I, sec. 8; *People v. Gonzalez* (1984), 104 Ill. 2d 332, 472 N.E.2d 417.) The scope of cross-examination is within the trial court's discretion. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 452 N.E.2d 857.) The widest latitude should be allowed the accused in questioning a witness concerning any matter which explains, modifies, or discredits his testimony. The fact that a witness has been arrested or charged with a crime may be shown where it would reasonably tend to indicate that his testimony might be influenced by bias, interest, or a motive to testify falsely. (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9; *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.) The evidence cannot be remote or uncertain but must give rise to an inference that defendant has something to gain or lose by his testimony. *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9; *People v. Sanders* (1986), 143 Ill. App. 3d 402, 493 N.E.2d 1.

■■■ On appeal, the reviewing court is limited to a determination of whether the trial court abused its discretion in limiting cross-examination and whether defendant suffered manifest prejudice by the lim-

itation. (*People v. Sanders* (1986), 143 Ill. App. 3d 402, 493 N.E.2d 1.) In the instant case, any bias Reid felt would tend to be against the State, not the defendant. Defendant argued that Reid's reluctance to appear was evidence of his uncertainty. However, defendant had ample opportunity to examine Reid on his identification of defendant and whether he was certain defendant was the assailant. The trial court did not abuse its discretion in determining the arrest warrant did not establish bias against defendant.

■■ Finally, defendant argues that the trial court erred in allowing the State to impeach Johnson and Kraus absent a showing of surprise and that the evidence was used as substantive evidence of guilt. The State responds that the impeachment was proper absent a showing of surprise and not used as substantive evidence of guilt.

Supreme Court Rule 238(a) (107 Ill. 2d R. 238(a)) states that "[t]he credibility of a witness may be attacked by any party, including the party calling him." The Committee Comments note that cases interpreting the former rule are no longer relevant and the new rule has eliminated the need to show surprise. (Ill. Ann. Stat., ch. 110A, par. 238(a), Committee Comments at 521 (Smith-Hurd 1985).) In *Chew v. Graham* (1984), 122 Ill. App. 3d 461, 461 N.E.2d 574, the court noted that the purpose of the amendment was to eliminate the last vestiges of the rule of practice which prevented a party from impeaching his own witness. (See also *People v. Lilly* (1985), 139 Ill. App. 3d 275, 487 N.E.2d 414.) We agree.

Here, Johnson and Kraus stated that defendant was not present at the time of the shooting. This was a substantial change from their pretrial statement to the police. The day before the trial they indicated they would not identify defendant as the assailant. The prosecutor impeached them with their pretrial statements. He then asked the police officers about the statements. They were not argued as substantive evidence of guilt, and the jury was properly instructed. No error occurred.

For the above reasons, we affirm the trial court.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.