THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN PARKER, Defendant-Appellant.

Second District   No. 2—86—0628

Opinion filed February 2, 1988.—Rehearing denied March 15, 1988.

LINDBERG, P.J., specially concurring.

G. Joseph Weller and Kim DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow and Robert F. Casey, State's Attorneys, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:
Defendant, John Parker, was charged with two counts of home invasion, two counts of armed robbery, and one count of residential burglary. A jury returned guilty verdicts against him on all five counts from which he appeals. We affirm in part and vacate in part.

On January 20, 1986, Cindy Cissna and her boyfriend, Willie Towns, were entertaining some friends in their home in Aurora. Between 8 and 8:30 p.m., Willie and Cindy's brother-in-law, Brian, left the home to pick up pizza. Beth Kenner stayed behind with Cissna.

Twenty minutes later, Cissna heard a knock on the door. When she opened the door she saw a black man standing silently at the door. The two looked at each other for about a minute, at which point the man pulled a sawed-off shotgun from under his coat, walked into the house, and told Cissna to lie on the floor and not look up. Approximately three masked black persons followed the man into the house. These individuals removed various valuables from the house, and Cissna was threatened a couple of times while they were in the house.

Defendant was arrested after Cissna picked him from a photographic lineup conducted three or four days after the incident. Kenner was unable to identify defendant.

During *voir dire*, the State exercised six of its peremptory challenges to exclude certain persons from the jury. Among those excluded was Lenora Pendleton, the only black juror. Defense counsel objected to the State's use of the peremptory challenge against Mrs. Pendleton. After a lunch recess, the assistant State's Attorney requested leave to make a record as to his reasons for excusing Mrs. Pendleton. The State's Attorney stated:

> "I was concerned in talking to her about a couple of things. Number one, it appeared that she had a relative who had previously been convicted of an offense that apparently was similar to this one. That's a situation that's always a red flag that concerned me.
>
> As well as I don't mean to be unkind to her, but she did not seem to me to be that intelligent of a person. She left out a number of items on her questionnaire and she wasn't even familiar with what type of work her husband does.
>
> And I also—It also seemed to me that she was not the serious type of person, shall I say, that I would want on this jury. She laughed about a number of things. I'm looking for people on this case who are going to take this case very seriously and not flippantly.
>
> So I would say that those were the reasons that I had for excusing Mrs. Pendleton."

The court allowed the peremptory challenge to stand.

At trial, Cissna testified that when she first saw the man at her door she thought that she had seen him two to three years before, at the Montgomery Gardens apartment complex. Cissna did not remember if she told the police on the day of the incident that the man at the door resembled the man from the complex. Two to four days after the incident, Cissna told Aurora police detective Handle that the person at her door looked like John Parker, the man from the complex.

However, for some time she doubted it was Parker because she did not think that "he would do that to [her]." She also stated that at the time of the occurrence, she was not positive that it was Parker because the man at her door had different hair than Parker and had a "mean look" on his face that she had never seen on Parker. She later changed her mind and told police that she was positive that the man was John Parker. On January 24, 1986, Cissna viewed a photographic lineup and picked John Parker's picture as the man who had entered her home on January 20, 1986.

The State later presented the testimony of Aurora police officer Diane Carlson. Over defense counsel's objection, Carlson testified to Cissna's statements on January 20. Carlson stated that at that time Cissna described the man that entered her home as a man that she was familiar with from the Montgomery Gardens apartment complex. Cissna did not provide a name that night.

At the close of trial, the jury returned guilty verdicts on all five counts. After a sentencing hearing the court sentenced defendant to 12 years of imprisonment on all five counts to be served concurrently. Defendant timely appealed.

■ Defendant first contends that the trial court abused its discretion when it upheld the State's use of a peremptory challenge to exclude the only black member of the venire from the jury. Defendant argues that the trial court's failure to sustain defendant's objection to this exclusion was an abuse of the court's discretion under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. In response, the State argues that Mrs. Pendleton was not challenged for racially discriminatory reasons, but rather, was challenged for racially neutral reasons.

In *Batson*, the Court stated:

"[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group [citation], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prose-

cutor used that practice to exclude the veniremen from the petit jury on account of their race." 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1722-23.

■ Despite the State's protestations to the contrary, we find that defendant made a *prima facie* showing that the State's use of its peremptory challenge to exclude Mrs. Pendleton was racially discriminatory. In the present case it is clear that defendant, as a black, was a member of a cognizable racial group and that the prosecutor in the case used a peremptory challenge to exclude a member of defendant's race—Mrs. Pendleton. Thus, the only requirement remaining for defendant to show was that these facts and any other relevant circumstances raised an inference that the prosecutor used the peremptory challenge to exclude Mrs. Pendleton on account of race. (476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) We are of the opinion that any time that all members of defendant's race have been excluded from the jury this final element is met. In reaching this conclusion we are guided by *Batson*, wherein the Court stated that a "pattern" of strikes against black jurors in the venire might give rise to an inference of discrimination. (476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723. But see *People v. Brown* (1987), 152 Ill. App. 3d 996 (although the only member of defendant's race was excluded from the jury, the court found that because defendant did not present the reviewing court with a transcript of the *voir dire* it could not determine the circumstances regarding the empaneling of the jury and thus found that the defendant did not meet his burden of establishing a *prima facie* case).) Consequently, since Mrs. Pendleton was the only member of defendant's race and she was excluded by a peremptory challenge, we find that defendant made out a *prima facie* case. Thus, the burden shifted to the State to enunciate a neutral explanation for challenging Mrs. Pendleton. *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

■ To be found racially neutral "[a] prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." (476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) But, a prosecutor may not merely respond with general assertions denying that he had a racially discriminatory motive. (476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Instead, the prosecutor must "articulate a neutral explanation related to the particular case to be tried." (476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The trial court must then determine whether the peremptory challenge was made for racially discriminatory reasons. (476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.) On review, such a decision will be given great

weight and will only be reversed if the trial court abused its discretion. See 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21.

■ In the present case, the State articulated three reasons for dismissing Mrs. Pendleton. The prosecutor stated that he dismissed her because (1) she had a relative who had previously been convicted of an offense that was similar to the one for which defendant was being tried; (2) she did not seem to be an intelligent person; and (3) she was not a serious person.

However, defendant contends that when the prosecutor's reasons for exclusion are compared to the rest of the jury it becomes apparent that the exclusion was not racially neutral. Defendant argues that each of the factors stated by the prosecutor applied to white jurors who were not excluded. Specifically, defendant notes that two jurors who were kept on also had relatives who were involved in criminal conduct.

We do not find this argument persuasive. In the present case, Mrs. Pendleton stated that her brother-in-law was convicted of robbery 10 years prior to the present trial. For this he served five years. Thus, the crime that Mrs. Pendleton's brother-in-law was convicted of was similar in nature to the crime of which defendant was accused. In contrast, the criminal activity of which the relatives of other jurors were accused was neither similar nor as serious in nature as the crime of which defendant was accused. One of the jurors with whom defendant would have us compare Mrs. Pendleton stated that she had a brother who, about a year prior to the trial in the instant case, was "going to take some parts off [an old car]." For this he had to go to court and was fined. The other juror with whom defendant would have us compare Mrs. Pendleton had an ex-husband who had been charged with interference with a police officer in relation to the Kent State riots.

We are consequently of the opinion that the first articulated reason enunciated by the State showed a racially neutral motive for dismissing Mrs. Pendleton and that the decision of the trial court to overrule defendant's objection after he had heard the State's reasoning was not an abuse of discretion. In reaching this holding we do not address, nor do we feel the need to address, the other two reasons articulated by the State for excluding Mrs. Pendleton.

■ Defendant next contends that the trial court erred in admitting a prior consistent statement of Cissna's identifying defendant as a man she had known at an apartment complex at which she had previously lived. In response, the State argues that such evidence was

admissible as a prior statement of identification under *People v. Rogers* (1980), 81 Ill. 2d 571.

As a general rule prior consistent statements are inadmissible to bolster the testimony of a witness. (*People v. Clark* (1972), 52 Ill. 2d 374, 389.) However, our supreme court has held that there is an exception to this general rule where the statement concerns identification. (*Rogers*, 81 Ill. 2d at 578.) In *Rogers*, the court stated:

"In *People v. Clark* (1972), 52 Ill. 2d 374, 388-90, this court noted the general rule that although the witness may be present in court and subject to cross-examination, he may not testify as to statements he made out of court for the purpose of corroborating his testimony given at trial relative to the same subject, except to rebut a charge or inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication. This general rule does not, however, apply to statements of identification." 81 Ill. 2d at 578.

Defendant, however, argues that *Rogers* only applies to prior consistent statements of identification made after viewing a lineup, photographs, composite sketches, or other similar forms of identification. Defendant contends that this case is far more analogous to the more recent case of *People v. Emerson* (1983), 97 Ill. 2d 487. We disagree.

Although the court in *Emerson* held that it was improper to admit a prior consistent statement which dealt with identification (97 Ill. 2d at 501), it did not address the issue of whether the statement should be admissible under the identification exception stated in *Rogers*. Therefore, although *Emerson* presents an apparently inconsistent outcome with the decision reached in *Rogers* and the principles stated therein, we do not believe that such an inconsistency can override the clear language of *Rogers*. We therefore hold that the trial court did not err in allowing Officer Carlson to testify as to Cissna's prior statements concerning defendant's identification.

■ Defendant next contends that one count of home invasion must be vacated since the facts reveal that he entered the home only once. We agree.

The statute making home invasion an offense provides:

"A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or per-

sons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a).

In a recent case, the Appellate Court for the Fourth District held that because section 12—11 refers to "person or persons" as potential victims a defendant could be found to have committed only one offense where there was only one entry regardless of the number of victims. (*People v. Yarbrough* (1987), 156 Ill. App. 3d 643, 646.) We find this reasoning persuasive and therefore conclude that count II charging home invasion must be vacated.

Affirmed in part and vacated in part.

UNVERZAGT, J., concurs.

PRESIDING JUSTICE LINDBERG, specially concurring:

I agree with the majority that the State met it's burden of rebuttal by establishing race-neutral bases for it's challenge of the venireperson. I join in affirming the judgment of the circuit court of Kane County.

However, I would decline to review the trial court's finding that defendant established a *prima facie* case of racial discrimination as it is an issue not necessary to our resolution of the judgment of the circuit court. In *People v. Brown* (1987), 152 Ill. App. 3d 996, 505 N.E.2d 397, it was similarly unnecessary to address that issue and, as the majority notes, *Brown*'s resolution of that issue is *dictum*. (166 Ill. App. 3d at 127.) A reviewing court will ordinarily not consider questions or contentions which are not essential to the determination or final disposition of the cause before it. *People v. Berlin* (1978), 58 Ill. App. 3d 612, 616, 374 N.E.2d 948, *rev'd on other grounds* (1979), 75 Ill. 2d 266, 388 N.E.2d 412.