THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD SHRINER, Defendant-Appellant.

Second District   No. 2—88—0227

Opinion filed June 15, 1990.—Rehearing denied July 16, 1990.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Michael Shevick, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Edward Shriner, was indicted in the circuit court of Du Page County on two counts of home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11), two counts of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), two counts of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)), four counts of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2), and two counts of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)). The residential burglary and armed violence counts were nol-prossed, and, following a jury trial, defendant was found guilty of all counts of home invasion, armed robbery, and unlawful restraint. Defendant was determined to be a habitual criminal (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*) and was sentenced to natural life imprisonment on the home invasion and armed robbery convictions.

On appeal, defendant raises the following issues: (1) whether the trial court abused its discretion in excluding the testimony of an alibi witness as a sanction for defendant's violation of the discovery rules; (2) whether one of defendant's home invasion convictions should be va-

cated because defendant committed only one illegal entry; (3) whether the habitual criminal statute is unconstitutional; and (4) whether defendant's previous conviction under a Federal armed bank robbery statute constitutes a prior offense for purposes of the habitual criminal statute.

The relevant facts are as follows. On April 1, 1986, at about 8 to 8:30 p.m., the victims, Salvador and Darlene Barrocas, were at home in Medinah, Illinois, when they heard a car pull into their driveway. Mr. Barrocas went to the front door while his wife turned on the outside and foyer lights. The Barrocases observed two men, one they identified in court as defendant, on their front sidewalk. After a brief conversation with the men, Mrs. Barrocas reentered the house and wrote down the license plate number, JXL 258, of the car driven by the men. The younger man, not the defendant, asked Mr. Barrocas to write down some directions to a particular address in the subdivision, which Mr. Barrocas entered his lighted garage to do. The younger man and defendant entered the garage, drew handguns, and ordered the Barrocases into a utility room, which was lighted. While in the utility room, the Barrocases were able to see the men's uncovered faces.

The men then placed the victims in the bathroom. They observed both men again when the men removed Mr. Barrocas to help them unlock a gun cabinet. Again, when the men took him into the bedroom, Mr. Barrocas had another opportunity to view defendant. Both men left at about 9:45 p.m. after taking numerous items of personal property and money.

The Barrocases gave descriptions of both men to the police and described the perpetrators' car as a blue compact with license plate number JXL 258. Later, the Barrocases picked defendant and William DeBusk from two separate photo arrays as the men who entered their home on the evening of April 1, 1986. They also separately picked defendant and DeBusk out of two separate lineups on April 3, 1986.

On April 2, 1986, at approximately 1 p.m., the police stopped a blue, Ford Escort with license plate number JXL 258. This vehicle was leased to Terrence Maloney, who informed the police, and later testified, that he had leased the vehicle for his friend, defendant, who used the car and paid him for the rental. Defendant was driving the car, and DeBusk and another person were passengers. After removing all three occupants from the vehicle, the police observed a handgun protruding from an athletic bag in the car. Further examination revealed a second handgun in the bag. The three occupants were then taken to the police station, and the vehicle was driven to the police garage.

At the station, defendant was searched and $217.24 was found on

his person, including a $100 bill and a $2 bill. Additionally, a ladies' watch was removed from defendant's pants' pocket. Mrs. Barrocas identified the watch as hers and stated that it had been missing since April 1, 1986. According to the Barrocases, they habitually carried a $100 bill in their billfolds and that both billfolds were missing as of April 1. Their son's $2 bill collection was also missing. Furthermore, numerous items seized from the vehicle driven by defendant were identified as property owned by the victims and missing from their home following the April 1 home invasion.

During trial and prior to the State's final witness' testimony, the prosecutor advised the court that he had talked to an "alibi witness" provided by defendant pursuant to discovery, who indicated that she had mailed a notarized affidavit summarizing her potential testimony to defendant and his defense attorney about one year earlier. The prosecutor then orally requested the affidavit. Defense counsel denied receiving such an affidavit, and defendant volunteered that the affidavit had been mailed to him at a time when he had elected to defend himself with only the assistance of standby counsel. A copy of the affidavit was then given to the prosecutor by defendant. The prosecutor indicated to the court that he would pursue the matter after presenting his last witness.

The matter regarding the affidavit was again taken up after the State rested. At that time, defense counsel indicated that he had interviewed the affiant and that she had indicated she would not testify to an exact time when defendant left her residence on the evening of April 1 but only that it was dark. The affidavit states that defendant left between 8:30 p.m. and 9 p.m. The trial court ruled that it would not allow the affiant to testify regarding an alibi.

Following further argument by both defense counsel and the prosecutor, the court allowed *voir dire* of the affiant, Jean Woody. Woody acknowledged preparing the affidavit at defendant's request. She then stated that defendant and DeBusk arrived at her residence in Dixmoor, Illinois, at around 4 p.m. on April 1, 1986. She further stated that defendant and DeBusk left at about 8:30 p.m. or 9 p.m. According to Woody, she recalled the time because she ended up cooking out on her grill after dark because of the two men interrupting her original dinner plans and that after she had eaten, the 10 p.m. news was about to come on. Woody stated on cross-examination that she mailed a copy of the affidavit to both defendant and his trial counsel, but stated on redirect that she mailed a copy to trial counsel at a downtown Chicago address. The trial court acknowledged that trial counsel has never had a downtown Chicago office.

The trial court found Woody's proposed testimony to constitute an alibi defense and again ruled that Woody would not be able to testify as an alibi witness.

DeBusk testified on behalf of defendant. According to DeBusk, on the evening in question, he and defendant went to Jean Woody's residence near Blue Island, Illinois, at about 4 p.m. and he and defendant left at about 7:45 p.m. He and defendant then drove to defendant's residence, he borrowed defendant's blue Escort and, along with someone named Kenny, committed the offenses at the Barrocases' residence. At about 12:10 a.m., DeBusk and someone named Wedlake picked up defendant, and the trio spent the night at a Holiday Inn. The following morning, DeBusk and Wedlake tried to pawn some of the jewelry. DeBusk gave defendant a ladies' watch taken from the Barrocases' residence to give to defendant's girlfriend.

Officer Thomas Vosburgh of the Du Page County sheriff's office testified in rebuttal that DeBusk told him in an interview on April 2, 1986, that he had been with defendant continuously between Tuesday afternoon, the day of the offense, and the time he and defendant were arrested.

We first address defendant's contention that the trial court abused its discretion in refusing to allow Jean Woody to testify to an alibi defense. We begin by determining that Woody's proposed testimony, based on her affidavit and her testimony during *voir dire*, constituted an alibi defense. According to her affidavit and her testimony during the *voir dire*, defendant did not leave her residence until 8:30 p.m. or 9 p.m. Mrs. Barrocas testified that defendant and the other man arrived at her house sometime between 8 p.m. and 8:30 p.m.. As defendant clearly could not be in two places at once, Woody's proposed testimony constituted an alibi defense. (See *People v. Fritz* (1981), 84 Ill. 2d 72, 76-77, 417 N.E.2d 612.) Defendant's failure to timely furnish Ms. Woody's affidavit to the State, as defendant concedes on appeal, was a violation of Rule 413(d)(i) (107 Ill. 2d R. 413(d)(i)). We further believe that defendant's failure to submit the affidavit to the State also constituted a violation of Rule 413(d)(iii), as that rule requires defendant to provide if he "intends to prove an alibi, specific information as to the place where he maintains he was at the time of the alleged offense." (107 Ill. 2d R. 413(d)(iii).) The affidavit here clearly contains information regarding the specific place he maintained he was at and should, therefore, have been provided to the State.

Supreme Court Rule 415(g)(i) provides:

"(g) *Sanctions.*

(i) If at any time during the course of the proceedings it is

brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 107 Ill. 2d R. 415(g)(i).

■ In *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, the United States Supreme Court addressed the propriety, under the sixth amendment to the Federal Constitution, of excluding a defense witness from testifying as a sanction for failure to disclose that witness pursuant to Illinois' criminal discovery rules. In holding that exclusion did not violate the compulsory process clause of the sixth amendment, the Court rejected defendant's contention that exclusion could never be an appropriate sanction regardless of the egregiousness of the discovery violation. (*Taylor*, 484 U.S. at 416, 98 L. Ed. 2d at 815, 108 S. Ct. at 656.) Rather, the Court held that, where there is evidence that a defendant's discovery violation is wilful and blatant, it does not offend the sixth amendment to exclude the evidence which defendant had a duty to disclose pursuant to the appropriate discovery rule. (*Taylor*, 484 U.S. at 417, 98 L. Ed. 2d at 815-16, 108 S. Ct. at 656-57.) The Court further emphasized that in Illinois the sanction of preclusion is limited to only the most extreme cases of discovery violations. *Taylor*, 484 U.S. at 417 n.23, 98 L. Ed. 2d at 816 n.23, 108 S. Ct. at 657 n.23, citing *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274; see also *People v. Carrasquillo* (1988), 174 Ill. App. 3d 1023, 1032-33, 529 N.E.2d 603.

■ We turn then to the facts of this case. Here, there is no indication that the trial judge ever determined that defendant or his attorney wilfully or blatantly violated discovery by failing to submit Woody's affidavit to the State. Moreover, on this record, we find no evidence that the failure to give the State a copy of the affidavit was in any way wilful and blatant. Defense counsel stated that he never knew of the affidavit's existence until the State's Attorney brought it up during trial. Although Woody stated she sent a copy to defense counsel at his downtown Chicago address, the trial judge acknowledged that defense counsel never has had a Chicago office. While defendant himself did possess a copy of the affidavit, we cannot say that a defendant, unversed in the complexities of the discovery rules, would recognize the need to submit the affidavit to the State. Moreover, there is no evidence that defendant withheld the affidavit intentionally to gain some tactical advantage or to disrupt the proceedings.

Absent a showing of wilful and blatant violation in failing to submit the affidavit to the State, the exclusion of Woody as an alibi witness impinged on defendant's sixth amendment right to compulsory process and constituted a clear abuse of discretion in this case.

It is also important to note that defendant did indicate Woody as a potential alibi witness by submitting his amended answer to discovery three weeks prior to trial. In the amended answer, he listed three potential witnesses, one of whom was Woody. Furthermore, he indicated in the amended answer that he would present an alibi witness. While his amended answer does not contain the specific information regarding his alibi defense to be testified to by Woody, it does belie any suggestion that defendant wilfully and blatantly failed to submit Woody's affidavit. Although the State suggested to the trial judge that it had no duty to interview defendant's witnesses listed in his amended answer anytime prior to when it did, which was during trial, it is equally clear that had the State interviewed Woody prior to trial it would have been aware of the affidavit's existence prior to trial and presumably in time to have investigated properly the assertions contained therein.

Finally, we think it worthy to note that the trial judge, in considering whether to exclude Woody's alibi testimony, apparently never gave proper consideration to other alternative sanctions such as a continuance. From our review of the record, the assistant State's Attorney's primary concern with the timing of submission of the affidavit was that he would have no opportunity to investigate Woody's statements contained therein concerning her verification of the date in question. The affidavit indicates that Woody checked with her school to verify her class schedule and that she was not at school on the evening in question. We do not perceive such information to be so difficult for the State's Attorney's office to investigate as to render a continuance impractical or inconvenient, particularly where the State was nearly finished with its case in chief. Furthermore, we do not believe it would have been necessary for the State to have conducted a criminal records check of Woody at that point as she had been revealed as a potential defense witness three weeks prior to trial, which presumably gave the State adequate time to investigate her background and assess her credibility generally. Under the circumstances of this case, it was a clear abuse of discretion to have excluded Woody's alibi testimony as a discovery sanction.

■ Although the trial judge abused his discretion and denied defendant his sixth amendment right to compulsory process, we believe such error to be harmless in this case. Even though error of constitutional magnitude occurred in this case, we may consider whether

such error was harmless. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; see *People v. Mahaffey* (1989), 128 Ill. 2d 388, 434, 539 N.E.2d 1172; *People v. Crews* (1988), 122 Ill. 2d 266, 288, 522 N.E.2d 1167; see also *People v. Echols* (1986), 146 Ill. App. 3d 965, 972-73, 497 N.E.2d 321 (exclusion of defense witness as sanction for discovery violation is harmless error in light of overwhelming evidence of defendant's guilt).

Here, the evidence implicating defendant in the crimes charged was overwhelming. Both victims had numerous opportunities to view defendant during the commission of the crime, close-up and under good lighting conditions. Both victims gave fairly detailed descriptions of defendant, and Mrs. Barrocas wrote down the license plate number of the vehicle used which matched that of the vehicle driven by defendant. Furthermore, both victims selected defendant's photograph from separate photo arrays, chose defendant from two separate lineups, and identified defendant in court. When police stopped a vehicle bearing the license plate number written down by Mrs. Barrocas, defendant was driving and had in his pants' pocket a ladies' watch taken from the Barrocases' home on April 1, 1986. Defendant also had a $100 bill and a $2 bill in his possession, those particular denominations having been taken from the Barrocases' residence. Additionally, numerous other items taken from the Barrocas home were found in defendant's vehicle shortly after his arrest. While we are cognizant of defendant's right to present alibi defense witnesses and note that William DeBusk testified in that regard, we believe that this evidence was so overwhelming that the error in excluding Woody's alibi testimony was harmless beyond a reasonable doubt.

■ We next address defendant's contention that one of his home invasion convictions must be vacated under *People v. Parker* (1988), 166 Ill. App. 3d 123, 519 N.E.2d 703. The State concedes that defendant is entitled to vacatur of one of his home invasion convictions. We agree that one of his home invasion convictions must be vacated as he only entered one home even though two victims were present. (*People v. McDarrah* (1988), 175 Ill. App. 3d 284, 300-01, 529 N.E.2d 808; *People v. Parker* (1988), 166 Ill. App. 3d 123, 129-30, 519 N.E.2d 703; *People v. Yarbrough* (1987), 156 Ill. App. 3d 643, 646, 509 N.E.2d 747.) We therefore vacate defendant's home invasion conviction and sentence as alleged in count II of the indictment.

■ We next consider defendant's contention that the habitual criminal statute is unconstitutional. In this regard, defendant maintains that the statute is unconstitutional because: (1) it was enacted in violation of article IV, section 8(d), of the Illinois Constitution (Ill.

Const. 1970, art. IV, §8); (2) it violates due process and the eighth amendment of the Federal Constitution; (3) it violates the separation of powers doctrine of the Illinois Constitution; and (4) it violates the prohibitions against *ex post facto* laws and double jeopardy contained in both the Federal and State Constitutions. Defendant acknowledges that this court has on two prior occasions rejected the same arguments presented in this appeal and further concedes that he failed to raise these constitutional challenges in the trial court but urges us to review them under plain error.

As this court has, on two prior occasions, considered the same constitutional challenges to the habitual criminal statute presented by defendant here (*People v. McDarrah* (1988), 175 Ill. App. 3d 284, 529 N.E.2d 808; *People v. Westefer* (1988), 169 Ill. App. 3d 59, 522 N.E.2d 1381), we again reject these contentions and hold the statute to be constitutional.

■ Finally, we consider defendant's contention that he was improperly sentenced under the habitual criminal statute (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1 *et seq.*). Specifically, he argues that the State failed to prove whether his prior 1975 conviction under section 2113(d), title 18, Crimes and Criminal Procedure (18 U.S.C.A. §2113(d) (West 1984)) was for a completed armed robbery as opposed to an attempted armed robbery. He further maintains that, even if it were proved that he committed armed bank robbery under the Federal statute, such conviction would not satisfy the habitual criminal statute as the Federal statute, which encompasses both attempted armed bank robbery and the completed offense, is not facially equivalent to a Class X felony.

The State initially responds that the issue is waived because defendant never raised a specific challenge pursuant to section 33B—2(c) of the statute, which states:

"(c) Any claim that a previous conviction offered by the prosecution is not a former conviction of an offense set forth in Section 33B—1 *because of the existence of any exceptions described in this Act*, is waived unless duly raised at the hearing on such conviction, or unless the prosecution's proof shows the existence of such exceptions described in this Act." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 33B—2(c).)

While section 33B—1(d) arguably provides for such exceptions, none are applicable in this case. Therefore, defendant's failure to raise any of those exceptions in the trial court does not waive presentation of the issue on appeal.

The State concedes that there was no specific evidence offered be-

low to prove whether defendant was convicted of armed bank robbery or attempted armed bank robbery under the Federal statute but maintains that the certified record of that conviction states it was of the completed offense. Upon examining the certified record of defendant's conviction under section 2113(d) admitted at the sentencing hearing, we are convinced that the State did establish that defendant was convicted of the completed offense of armed bank robbery. The certified record of conviction states that defendant was convicted of "aiding and abetting in armed bank robbery, in violation of 18 U.S.C. 2 and 2113(d)." On its face, the record of conviction states defendant was convicted of armed bank robbery, not attempted armed bank robbery. Defendant offered no evidence to rebut this, nor does the certified record in any way suggest that he was convicted of attempted armed bank robbery rather than armed bank robbery. The only argument advanced by defendant in the trial court was that the words "aiding and abetting" in the certified record of conviction suggests some other offense than armed bank robbery. The unrebutted evidence establishes that defendant was convicted of armed bank robbery which was properly considered as a qualifying Class X offense for purposes of the habitual criminal statute.

We would further note that as the State established that defendant was convicted of armed bank robbery, we need not consider defendant's facial equivalency argument. Defendant's reliance on *People v. Cannady* (1987), 159 Ill. App. 3d 1086, 513 N.E.2d 118, is misplaced. *Cannady* merely holds that the critical question is not what name is given to a prior offense, but, rather, whether the prior offense contains the same elements as an offense now classified in Illinois as a Class X felony. (159 Ill. App. 3d at 1090, 513 N.E.2d at 121.) Here, the prior offense, armed bank robbery, contained within section 2113(d), contains essentially the same elements as our armed robbery statute and thus qualifies under our habitual criminal statute. We decline to accept defendant's attempt to equate "offense" with "statute."

The judgment of the circuit court of Du Page County is affirmed in all respects except that the conviction and sentence in count II are vacated.

Affirmed in part; vacated in part.

INGLIS and McLAREN, JJ., concur.